WHITE *v.* SADLER.

1. CLERKS OF COURTS—JUDGMENT—NOTICE OF ENTRY.
   Clerks of courts of record have the duty of forthwith giving
   notice in writing of all judgments entered in civil cases to
   attorneys of record in the case (Court Rule No 2, § 6 [1945]).

2. APPEARANCE—NOTICE OF FUTURE PROCEEDINGS—WAIVER.
   A party who has appeared in a case is entitled to notice of all
   future proceedings even though he has not pleaded but the
   failure to give notice may be an irregularity which may be
   waived (CL 1948, § 614.5; Court Rule No 8, § 7 [1945]).

3. JUDGMENT—DEFAULT—NOTICE.
   Advance notice to the defendant need not be given of the taking
   of a default (Court Rule No 8, § 7; No 10, § 2; No 28, §§ 3, 4
   [1945]).

4. NOTICE—HEARING.
   The purpose of any notice is to give the opposite party an op-
   portunity to be heard.

5. JUDGMENT—DEFAULT—HEARING.
   The right of the plaintiff to take a default is a matter of course,
   where the defendant has appeared but failed to file a timely
   answer, and no hearing is required to enforce such right (Court
   Rule No 8, § 7; No 28, §§ 3, 4 [1945]).

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  30 Am Jur, Judgments § 72.
[3]  31 Am Jur, Judgments § 505 *et seq.*
[5]  31 Am Jur, Judgments § 507.
[11]  34 Am Jur, Limitation of Actions § 428.
[12]  31 Am Jur, Judgments §§ 780–782.
[13, 14]  31 Am Jur, Judgments § 729.
[16]  5 Am Jur, Attorneys at Law § 78.
[17]  31 Am Jur, Judgments § 748.
[18]  31 Am Jur, Judgments § 751.
[19]  5 Am Jur, Attorneys at Law § 74.
[21]  5 Am Jur, Attorneys at Law §§ 249, 250.
[22]  5 Am Jur, Attorneys at Law § 39.

**6. Same—Default—Notice.**

The taking of a default is an ex parte proceeding and advance notice thereof would be unavailing and an idle and an impractical thing in the absence of explicit procedures set forth by appropriate court rules as to what should happen in the event the opposite party should appear and seek to object to the taking of the default (Court Rule No 8, § 7; No 28, §§ 3, 4 [1945]).

**7. Same—Default—Notice After Entry.**

It is important that a defaulted party know that his default has been taken so that he may have an opportunity to take timely steps to set aside the default (Court Rule No 28, §§ 3, 4 [1945]).

**8. Same—Default—Common Rule.**

A default is a "common rule" inasmuch as it is an order entered as a matter of course without any action or knowledge by the court (Court Rule No 28, §§ 3, 4 [1945]).

**9. Same—Default—Irregularity—Setting Aside.**

An irregularity in the taking of a default is sufficient ground for preventing the operation of the 4-month bar and for setting it aside but an irregularity in taking a default judgment must be accompanied by a showing of harm to the defendant against whom it is taken in order to set the judgment aside (Court Rule No 28, § 4 [1945]).

**10. Same—Promissory Note—Default—Setting Aside—Discretion of Court—Damages.**

A judgment on a promissory note, entered after a regularly-taken default, of which no advance notice of the entry of such judgment appears to have been given defendant for whom a general appearance had been filed was a valid judgment, where defendant did have notice of the entry of the default, since the entry of such judgment involved no discretionary action by the court, the damages being neither unliquidated nor uncertain and the defense of set-off, proposed on motion to set aside the default and judgment, was not barred by the judgment (Court Rule No 28, §§ 3, 4 [1945]).

**11. Pleading—Affirmative Defense—Statute of Limitations.**

The defense of statute of limitations is a technical one that requires affirmative pleading (Court Rule No 23, § 3 [1945]).

12. JUDGMENT—SETTING ASIDE—AFFIDAVIT OF MERITS—DEFENSES SOUGHT TO BE INTERPOSED.

Affidavit of merits, filed by defendant more than 4 months after entry of default judgment, did not show such defenses to plaintiffs' cause of action on promissory note as to render the judgment unconscionable, where it disclosed defendant sought to interpose a defense of set-off which was not necessarily barred by the judgment and defense of statute of limitations which could have been, but was not, pleaded (Court Rule No 8, § 7; No 23, § 3; No 28, §§ 3, 4 [1945]).

13. SAME—SETTING ASIDE DEFAULT—TIME.

It is generally regarded as mandatory that, in the absence of fraud, a motion to set aside a default be filed within 4 months after the regularly-filed default (Court Rule No 28, § 4 [1945]).

14. SAME—DEFAULT—MOTION TO SET ASIDE—TIME.

The entry of a judgment following a regularly-entered default constitutes proceedings taken after default on the strength thereof which necessitates that a motion to set aside the default be filed within 4 months from the entry of the default (Court Rule No 28, § 4 [1945]).

15. SAME—SETTING ASIDE DEFAULT—TIME.

A trial court has no discretion in the matter of setting aside a regularly-entered default after the expiration of the period of limitation fixed by court rule (Court Rule No 28, § 4 [1945]).

16. ATTORNEY AND CLIENT—NEGLECT OF ATTORNEY ATTRIBUTABLE TO CLIENT.

The neglect of an attorney is generally regarded as attributable to his client.

17. JUDGMENT—SETTING ASIDE DEFAULT—BELATED APPLICATION—NEGLECT OF ATTORNEY.

The carelessness or neglect of either the litigant or his attorney is not normally grounds for granting a belated application to set aside a default that has been regularly entered (Court Rule No 28, § 4 [1945]).

18. SAME—SETTING ASIDE DEFAULT—NEGLECT OF ATTORNEY.

The neglect of defendant's former attorney to file an answer and set up defenses in action on promissory note, as rather broadly and vaguely alleged in belated motion to set aside default judgment, *held*, an insufficient basis upon which to set aside judgment entered upon the regularly-entered de-

fault, where there is no showing of an abandonment of the case by the former attorney (Court Rule No 28, § 4 [1945]).

19. Attorney and Client—Imputation of Knowledge to Client.

The knowledge of an attorney is usually imputed to his client as the latter's agent.

20. Judgment—Setting Aside Default—Motion for New Trial.

A defendant's motion to set aside a judgment and for a new trial cannot be entertained by the trial court, where the defendant is subject to a regularly-entered default that has not been set aside (Court Rule No 28, § 4; No 47, § 1 [1945]).

21. Attorney and Client—Claim of Neglect—Investigation by Court.

Courts have a responsibility to investigate charges of neglect on the part of attorneys, since attorneys are officers of the court, to the end that an attorney be vindicated or disciplined.

22. Same—Appearance—Notice of Withdrawal.

Once an attorney enters an appearance for a client and for any reason later finds he cannot or does not intend to continue to represent that client, he owes a clear duty to his client, opposing counsel and the court to take timely affirmative steps to be relieved of his retainer and have his appearance withdrawn.

Appeal from Oakland; Hartrick (George B.), J. Submitted April 3, 1957. (Docket No. 20, Calendar No. 46,865.) Decided December 24, 1957.

Action on note by Frank White and Emma White against Claude E. Sadler resulted in default judgment for failure to answer. Defendant moved to set aside default and judgment and asked that he be permitted to file answer and that case be set for trial. Motion denied. Defendant appeals. Affirmed. Remanded, however, for purpose of inquiry into claimed neglect of defendant's former counsel.

*Arthur H. Rice,* for plaintiffs.

*Sherman McDonald,* for defendant.

VOELKER, J. This case involves a consideration of some nice procedural questions. Defendant appeals from an order denying his motion to set aside a default and judgment entered against him following failure to plead after appearance of his attorney. The denied motion also sought a new trial. Suit on a promissory note was commenced by summons and declaration, with bill of particulars attached, copy of which was personally served on the defendant on March 25, 1955, and proof of service filed. Defendant's general appearance by his attorney was filed on April 7, 1955. No answer or other pleading was filed by him and plaintiffs' attorney ultimately served true copies of an affidavit and order of default on defendant's attorney. Proof of service thereof by mailing to defendant's attorney was duly filed. The original affidavit of default and order of default were filed on July 21, 1955. Default judgment was entered on August 22, 1955, but the record discloses no proof of service of notice of the entry thereof was ever filed by the plaintiffs, as then required by the court rule hereinafter referred to. Nor is there any showing that defendant received from plaintiffs any advance notice of the entry of such default judgment.

On January 26, 1956, the defendant's present attorney filed a general appearance and on the same date filed defendant's motion to set aside the judgment and for a new trial, alleging that he had a meritorious defense to the action (statute of limitations) and also a valid set-off and recoupment; that he had relied on his former attorney to file an answer setting up his defenses and that his attorney had failed to do so; that he had engaged a new attorney as soon as he learned of the default judgment (early the same month, January, when an execution was served on him); and that his answer was now prepared and ready to be filed. This motion was denied without prejudice and on February 27, 1956, defend-

ant filed another motion to set aside both the default as well as the judgment and also for a new trial, with substantially the same allegations, which motion was also denied and this appeal has resulted.

As we follow the defendant's argument it appears to be his claim that, under both the statute and court rule hereafter cited, once his appearance is filed, even though he does not make answer, he is entitled to notice of all future proceedings, including advance notice of proceedings for taking default; also that under section 1 of Court Rule No 47 (1945), as it stood when this judgment was entered, it was the mandatory duty of plaintiffs' counsel to serve notice of the entry of the default judgment on defendant's counsel and file proof of service thereof; and, therefore, since this Rule No 47 step was not observed, that the trial court was wrong in denying defendant's motion to set aside and especially in denying that part of his motion which sought a new trial, since the 20-day limitation on motions for new trials would not therefore have begun to run; all this despite that portion of Court Rule No 28, § 4 (1945), providing that where any default is taken following personal service such default "shall not be set aside unless the application shall be made within 4 months after such default is regularly filed or entered."

(At the outset we should remind the profession that by the 1956 amendment to Court Rule No 47 proof of service of notice on the other side of entry of judgment or rendition of verdict need no longer be made by counsel, the time for filing a motion for a new trial now beginning to run from the date of entry of the judgment. We may add that Honigman's Michigan Court Rules Annotated at page 106 of the 1957 pocket supplement nevertheless advocates continuance of the old practice as a wise precaution.)

We observe that under Court Rule No 2, § 6 (1945), it is made the duty of all clerks of courts of record

to "forthwith" give notice in writing of all judgments (and certain other things there enumerated) entered in civil cases "to the attorneys of record in the case," but the record before us does not disclose whether this was done in this case. In any event we do not think it is controlling on our decision.

Defendant states in his concise statement of facts that "A copy of the declaration and bill of particulars is not shown by the record to have been served on the defendant or his attorney." But this statement is disputed by the plaintiffs in their counterstatement and the record shows the defendant is in error.

Both the statute (CL 1948, § 614.5 [Stat Ann § 27.815]) and the rule (Court Rule No 8, § 7 [1945]) provide that a party who has appeared is entitled to notice of all future proceedings even though he has not pleaded. Neither state any exceptions. We further observe that while *Connor* v. *Jochen,* 171 Mich 69, is often cited for the proposition that, following appearance, notice of all future proceedings is obligatory, the case actually holds quite the contrary in that the irregularity there (order *pro confesso* entered after appearance without notice) was held waived (p 71) once the defendant had moved to set aside the default for other reasons.

As stated, defendant urges that he is entitled to advance notice of the taking of the default. He cites no controlling authority and we find none. We think that part of the defendant's possible confusion on this point results from his failure to adequately distinguish between the filing of the default papers— "taking the default," as it is usually phrased—and the entry of the judgment on the default. If so he is not alone as a number of legal writers and even some cases have also been unfortunately prone to confuse the two. The distinction is important and sometimes vital. It is the proceedings to take the default which

must be regular for the default to stand; not necessarily so in the entry of the judgment. The problem revolves about the proper interpretation of Court Rule No 28, §§ 3 and 4 (1945). We believe the words in that rule clearly refer to the taking of the default rather than to the entry of any judgment based thereon. As we hope to demonstrate, the cases which require the taking of the default be regular before the 4-month limitation in that rule becomes effective do not apply to the entry of the default judgment.

The defendant seems to feel that after appearance he is entitled to *advance* notice of the taking of the default; otherwise the default is not regular. In this he is in error, although it is an error in which, as we have indicated, he is not entirely alone. Thus Searl in the 1941 supplement to his pioneer work on Michigan practice (Searl, Michigan Pleading and Practice, § 351) seemed clearly to advocate advance notice of the taking of the default, citing *Connor* v. *Jochen,* 171 Mich 69. But the *Connor Case* did not in terms require *advance* notice, although this requirement has unfortunately been wrongly read into the rather general language there used.

Upon principle it seems clear there should be no requirement of advance notice before the taking of a default. The reason that any notice is given at all is because of Court Rule No 8, § 7 (1945)—which is the general requirement, after appearance—and Court Rule No 10, § 2 (1945), which specifically refers to motion practice. The latter rule by its express terms requires notice in advance of hearing. Court Rule No 8, which applies to our situation, makes no such requirement.

The purpose of any notice is to give the opposite party an opportunity to be heard. Where a person appears and fails to file a timely answer, the right of the opposite party to take his default is a matter of course and no hearing is required to enforce that

right. The taking of a default is an ex parte proceeding and advance notice thereof would not only be unavailing but an idle and impractical thing in the absence of explicit procedures set forth by appropriate court rules as to what should happen in the event the opposite party should appear and seek to object to the taking of the default. *After* the default is taken, however, it is important for the defaulted party to know that his default has been taken so that he may have an opportunity to comply with the provisions of Court Rule No 28 (1945) and take timely steps to set aside the default. We rather like the quotation from 1 Burrill's Practice, p 345, in *Ketcham* v. *Kent Circuit Judge,* 115 Mich 60, 62, which states, in part, that in the case "of the entry of common rules  *  *  * it is not necessary for the opposite party to be previously apprised." In our view the taking of a default is plainly a "common rule" inasmuch as it is an order entered as a matter of course without any action or knowledge by the court.

When it comes to the matter of the entry of the default judgment, however, we are dealing with a positive action of the court as to which advance notice will give the opposite party an opportunity to be heard. A defendant may not want to contest basic liability but sometimes he may be keenly interested, say, in the amount of damages recovered. Again he may enthusiastically not want to contest his wife's action for divorce, but still want an opportunity to be heard on matters of support, custody or visitation of children and the always interesting question of alimony. In other words, an appearing but nonpleading defendant may frequently want to be apprised in advance of the taking of a prospective judgment or decree where the damages are unliquidated or uncertain or where the relief sought is to a large extent discretionary with the court.

The failure to give advance notice of the settlement of the decree is referred to as an "irregularity" in *Ross* v. *St. Clair Circuit Judge,* 291 Mich 70. It is to be noted, however, that .it is an irregularity in the entry of the decree or judgment and not in the taking of the default. The two are not the same thing. That such an irregularity need not be fatal is shown in the *Ross Case, supra.* It is more specifically discussed in *Union Trust Company* v. *Detroit Trust Company,* 240 Mich 646 at pp 651, 652, where this Court said: "The court ought not to set aside a decree for a harmless irregularity or just to attain perfection of record. It ought also to be made to appear that the irregularity affected injuriously the interest of a party." Thus while an irregularity in the taking of a default may be the basis for preventing the operation of the 4-month ·bar under Court Rule No 28, § 4 (1945), an irregularity in the taking of a default judgment need not necessarily be the basis for setting aside such judgment unless the party affected is shown to have been harmed by the failure to give advance notice of the entry of the judgment. Where there is an irregularity in taking the default, only that need be shown, and not harm in addition; but where there is an irregularity in taking a default judgment, harm in addition must be shown.

Applying these general observations to our particular case, there is no showing here that there was any irregularity in the taking of the default. The showing is to the contrary. In any event we find and hold that there was no irregularity. Any irregularity that existed here lay in the failure of the plaintiff to give advance notice of the entry of the subsequent judgment. In this case, however, no showing is made of any injury to the defaulted defendant by reason of his failure to receive such advance notice. Our conclusion is founded upon the fact that if the defendant here had actually received

such advance notice he could not have complained of anything that took place at the default hearing or have urged the defenses he now seeks to raise unless he had first taken steps to set aside the prior default which had been regularly taken.  He had not done so.  In the status of the pleadings that were before the court at the time of the entry of the default judgment in our opinion there was nothing the lower court could do but enter the judgment that he did.  The damages were not unliquidated or uncertain; no discretionary action rested in the court.  Hence, defendant was not harmed by the failure to receive advance notice of the entry of the judgment.  The harm to him arose from his failure to take timely steps to set aside the taking of the default within the 4-month period, of the taking of which he clearly had notice.

It is conceivable, of course, that under some circumstances the affidavit of merits could show such a defense to the action that it would be unconscionable to let the judgment stand.  Honigman (Honigman, Michigan Court Rules Annotated) discusses and cites cases on this point at page 275 and under note 14 beginning on page 284.  No such showing is made here.  We do not think the defense of set-off here was necessarily barred by the judgment.. The defense of the statute of limitations is a technical one requiring affirmative pleading* and, here at least, gives no semblance of demonstrating an unconscionable result.

Our Court has traditionally been strict on setting aside defaults once regularly entered.  Where a default following personal service is regularly taken, the court rule providing that it shall not be set aside after a certain time (presently 4 months) has generally been regarded as mandatory (*Hensey* v. *Hen-*

---

. * See Court Rule No 23, § 3 (1945).—Reporter.

*sey,* 331 Mich 518; *Gombasy* v. *Gombasy,* 318 Mich 139; *Watkins* v. *Wayne Circuit Judge,* 247 Mich 237), and this rule, however harsh, has been subject to few exceptions, the most notable being that of fraud (*Hensey* v. *Hensey, supra*), which is not urged or suggested here. We have further held that the entry of a judgment following the default constitutes "proceedings taken after default on the strength thereof," within the meaning of Court Rule No 28 imposing the 4-month limitation (*Newman* v. *Wayne Circuit Judge,* 215 Mich 185 and cases cited).* In addition, in our case, we have an execution returned unsatisfied. The *Newman Case* also flatly states (p 188) that after the period of limitation fixed by the rule has expired the trial court has no discretion to set aside a default regularly entered.

Defendant next suggests that he should in any case have prevailed because the neglect to plead, if any, was that of his former attorney and not of himself, a proposition the appeal and reasonableness of which he does not mar by the citation of authority. Unfortunately for its success, however, we find that in Michigan the neglect of an attorney is generally regarded as attributable to his client (14 Mich L Rev 490; 14 MLP, Judgment, § 49, p 529; *Petersen* v. *Wayne Circuit Judge,* 243 Mich 600). The carelessness or neglect of either the litigant or his attorney is not normally grounds for granting a belated application to set aside a default regularly entered. We are afraid we see no reason why it should be so regarded in this case under the rather broad and vague allegations of neglect in defendant's motion.

It is not necessary for us to hold here that the neglect of an attorney may never be made the basis of a belated application to set aside a default. That might be too harsh a rule. (A similar problem exists

* The *Newman Case* construed the rule then existing (1921), the wording of which is substantially as in the present rule.—REPORTER.

as to delayed appeals, where we appear somewhat more prone to accept attorney neglect as an excuse. See Honigman's Michigan Court Rules Annotated, Court Rule No 55, § 3, p 585; and *Carras* v. *Bungalow Sandwich Shoppe Co.,* 257 Mich 467.)   We do hold, however, that no adequate showing for such relief was made here.

There is no showing by the defendant in his motion that he made any inquiry of his then attorney regarding the fate or disposition of his case until after the service of an execution upon him some 5 months after the entry of the default judgment.   We feel that in the absence of special circumstances, fully disclosed, ordinary prudence might have dictated another course.   What did the defendant think was happening to his case?   Nor is there any showing whether the alleged neglect was an outright abandonment of the case by the attorney or instead his negligent failure to act.   The distinction may be important, as we shall presently see.

We find no ALR annotation squarely on the point of the negligence of an attorney as a ground for opening or vacating a default judgment, but we do find one on the abandonment of or withdrawal from a case by an attorney as such a ground (114 ALR 279). That annotation has this revealing passage on page 280:

"An attorney's negligence or mistake is distinguishable, as regards the right to reopen a default judgment, from his abandonment of the case, which may be in effect a fraud on his client.   So that from the mere fact that the attorney's negligence may be imputable to his client and prevent the latter from relying on that ground for vacating or opening a default judgment, it does not necessarily follow that the same rule will apply in the event of the attorney's abandonment of the case.   It is said in 15 RCL (Perm Supp ed), Judgments, § 161, p 711:   'In some

jurisdictions the negligence or mistake of an attorney is not imputable to his client, and does not debar him from obtaining relief from a judgment due thereto, but the decisions in most of the States are to the effect that the neglect or mistake of an attorney or agent must be treated as that of his principal, and hence whenever the mistake, negligence or inadvertence relied upon is of so gross a character that it would not have entitled the party to relief had it been his own, it is equally unavailable to procure him relief when attributable to his attorney.' "

In the interests of fairness and uniform practice—and possibly some other things—we think it might be well in future situations of this kind for the applicant to serve a copy of his motion or petition to set aside upon the alleged offending attorney, filing proof of service, where the latter does not otherwise appear to admit or explain or defend his alleged neglect.

We may also observe in passing that if defendant's former attorney was as remiss as defendant seems to feel he was, there is the possibility of his considering bringing an appropriate action against him for his negligence. (*Cornelissen* v. *Ort,* 132 Mich 294.)

As for defendant's final point, we are afraid it is answered against him by our decision in *McInerney's, Inc.,* v. *Dunford,* 341 Mich 477, where we said on p 482:

"To escape the consequences of the 4-months rule set forth in Court Rule No 28, § 4 (1945), defendant Edna Dunford seeks protection under Court Rule No 47, § 1 (1945), which, in part, is as follows:

" 'Motions for new trials and motions in arrest of judgment, with the reasons on which they are founded, shall be filed and a copy thereof be served on the opposite party as follows: the former within 20 days after the filing with the clerk of the court proof

of service on opposing counsel of notice of the entry of judgment.'

"This rule has no applicability to the present case. The matters provided for in Court Rule No 47, § 1, are new trials and motions in arrest of judgment. In the instant case defendant is barred by the default.

"Court Rule No 28, § 4 (1945), bars defendant from the relief she seeks in this case. Defendant's motion for a new trial and to set aside judgment cannot be entertained while she is defaulted."

The order of the trial court is accordingly affirmed, with costs to the plaintiff.

––––––––––

Although we hold that the plaintiffs here should not be punished or their judgment lost to them because of any real or alleged neglect on the part of defendant's attorney, this is not to condone or make light of the charge of neglect as it still exists in this case. What are we to tell defendant beyond that he has lost his case? Must we merely express our sympathy and regrets as we turn him away? We think not.

It is not good for the legal profession to have litigants proclaiming that lawyers have neglected their cases. And it most certainly is not good for the litigants if their claims should happen to be true—and worse yet when nobody turns a hand. Whether a given claim of neglect by an attorney is groundless or not, it should never be ignored, whatever may properly happen to the main case. There is a responsibility resting squarely on our courts to investigate such charges as and when they are made. Attorneys are officers of the court and should be amenable to rapid answer to our courts when their actions are brought in serious question. A suggested procedure is not lacking. It was furnished in

*Carras* v. *Bungalow Sandwich Shoppe Co., supra,*
at pp 468 and 469, where we said:

"We think the circuit judge should summons the
attorney retained by defendant for investigation of
his claimed negligence. In future cases of this sort,
we suggest it would be good practice to require an
attorney so charged with negligence to testify on the
hearing of the motion  *  *  *  in order that the
court may not be imposed upon, and that attorneys
who disregard their duties may be disciplined."

We may also state that when an attorney once
enters an appearance for a client and *for any reason*
later finds he cannot or does not intend to continue
to represent that client, he owes a clear duty to his
client and opposing counsel and to the court to take
timely affirmative steps in the pending case to be
relieved of his retainer and have his appearance
withdrawn. If that were done unhappy situations
like this one would seldom, if ever, arise.

While we are not going to reverse the lower court,
then, for the reasons stated, we are going to remand
this case for one purpose: that the court may pro-
ceed on the sole question of alleged neglect, in the
manner suggested in the *Carras Case*. If the charges
are groundless, in all fairness the aggrieved attor-
ney is entitled to be openly and quickly vindicated
in the eyes of the public, the profession and the
bench; if not, he should be openly and with equal
speed disciplined as the extent of his neglect may
properly suggest. (Meeting this sort of charges fast
and head on, and letting the chips fall where they
may, is, we believe, an elementary condition to that
state of improved public relations and renewed pub-
lic confidence to which so many in our profession
properly aspire.) We further respectfully suggest
that when these things are done the court below will
send us a certified copy of his doings and findings in

the premises. If this procedure is followed in the future, we can more intelligently weigh and appraise such charges of neglect when they come before us in other cases.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, KELLY, CARR, and BLACK, JJ., concurred.